No. 10.—JOHN DOE, ex dem., ELISHA HINDSMAN and others, plaintiffs in error, *vs.* RICHARD ROE, casual ejector, and COLUMBUS WORTHEN, tenant in possession, defendant in error.

[1.] A charge of the Court, unsustained by the evidence in the cause, is error.

[2.] When a part of an entire tract of land is conveyed by the number of acres, and not by metes and bounds, and the line separating it from the balance of the tract is to be run, the statute of limitations does not begin to run until the division is made, unless there had been undisturbed possession for so great a length of time as to create a legal presumption that there had been a division.

Ejectment, from Coweta Superior Court. Tried before Judge BULL, at September Term, 1856.

This was an action of ejectment brought by John Doe, ex

dem., Elisha Hindsman, against Richard Roe, casual ejector, and Columbus Worthen, tenant in possession, for a portion of lot of land No. 231, situated in the county of Coweta.

It appeared from the testimony, that Charles Evans, under whom defendant claimed, went into possession of half the lot in dispute, in the year 1842, under a bond for titles from Hiram Camp; in 1847 Camp made a deed of the land to Evans and took up his bond and destroyed it. Evans remained in possession until 1852, claiming half the lot, when he sold it to S. W. Lee, the present owner and real defendant, Worthen being his overseer in possession of the premises. In 1845 the lot was divided by a surveyor, between Evans and Hindsman, and the line was run at their request. The deed from Camp to Evans dated in 1847, conveyed the east half of said lot, that is one hundred and one-fourth acres, and specifying that said lot was to be equally divided by a line to be run north and south. The deed from Evans to Lee also conveyed *one-half* of said lot, that is one hundred one and one-fourth acres. In November, 1852, James H. Graham, a surveyor run the dividing line and found it incorrect. Hindsman was present, and Graham being afterwards asked by him if he would swear to that line, Graham said he would rather run that line again; he run it and found that the original line was wrong and that defendant, or rather Lee, had in his possession five acres more than half the lot. This last survey was very accurately made. Hindsman then instituted this suit for the recovery of the five acres claimed and in the possession of Lee.

The presiding Judge charged the jury, that if the defendant, and those under whom he claimed and held, had been in the uninterrupted adverse possession of the land in dispute, under color of title for seven years before the commencement of the action, the plaintiff's right was barred. That if no title had been shown in the plaintiff, and no authority to divide the lot, the division originally made could

Hindsman et al. vs. Worthen.

not bind the party having the legal title, but that this did not prevent the statute of limitations from running in favor of Evans, if he held the premises, up to the line designated, adversely under color of title. That a discrepancy of a few acres in the quantity specified in the deed and the actual quantity in possession made no difference, if the premises, held under the bond or deed, were distinctly defined and bounded by ascertained limits. Plaintiffs' counsel requested the Court to charge the jury, that defendant's deed was not color of title to the five acres in dispute, inasmuch as defendant's deed only called for 101¼ acres, and he being in possession of 106¼ acres; which charge the Court refused to give. Plaintiffs' counsel requested the Court to charge the jury, that if they believed from the evidence, that it was specified in the deed from Camp to Evans, that the land was to be equally divided, the statute could not commence to run until said division; which charge the Court refused to give, but charged, that if it was so expressed in the deed, this would not affect the operation of the statute of limitations, if before the execution of the deed, Evans held the premises, distinctly bounded and marked out, under a bond for titles from Camp, from whom he obtained possession. The Court also refused to charge as requested by plaintiff's counsel, that the statute of limitations could not commence to run from the time of the division in 1845, nor until the error in that division was known; (the Court remarking that this made no difference, and not being willing to assume that there was error.)

The Court was also requested by plaintiff's counsel to charge, that if they believed that defendant had possession of the five acres, and had shown no color of title thereto, the simple possession would not protect him, unless seven years had elapsed before the passage of the act of 1852; which the Court refused to charge, there being no evidence of any *five acres* separate from the other or balance of the premises held by defendant, and having already charged that, unless the

defendant, and those under whom he claimed, had been in the continuous, uninterrupted and adverse possession of the *premises in dispute*, under color of title, for seven years before suit brought, that plaintiff was not barred.

To which charges and refusals to charge plaintiff's counsel excepted.

The jury found for the defendant and counsel for plaintiff upon the exceptions taken, tenders his bill of exceptions, &c.

SIMS, represented by POWELL and B. H. HILL, for plaintiff in error.

BUCHANAN, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

This ejectment was brought for the recovery of about five acres of land, claimed as a part of the eastern half of tract of land No. 231, in the 2d district of Coweta county. Some of the demises are for the half lot, but the contest is for a few acres only. The defendant pleads the statute of limitations. The action was instituted on the 14th day of February, 1853. There was a demise from Joseph W. Walton, the grantee of the entire tract of land. To support this demise, the grant from the State of Georgia to Joseph W. Walton was introduced. The plaintiff offered no other title.

The defendant's title deeds show that only one hundred one and one-fourth acres of land were claimed by him. The whole tract contained two hundred two and a half acres. The possession claimed by Evans, under the bond for titles and deed from Camp, was of half the lot of land only. The deed from Camp to Evans, was for half the tract of land, and stating that *it was to be divided north and south.*

The line previously run was not recognized by the contracting parties. There was no specified, defined boundary

between the two parts of the lot. That was an open imaginary line to be settled and adjusted at the convenience of the parties. The deed from Evans to Lee says nothing about the line, but conveys one hundred one and one-fourth acres of land. The deed from Camp to Evans, through which he claims, was notice to him that the line was to be run after that. Accordingly, in the latter part of the year in which S. W. Lee purchased the land, the line was run, the son-in-law of Mr. Lee and the tenant in possession being with the surveyor, and it was found that the line which had been run before the deed, and not recognized between the parties, had been incorrectly run. This line was run in 1852. In 1853 the same surveyor re-surveyed the land and found that the defendant had in his possession five acres more than half the lot of land.

[1.] Upon looking carefully through the evidence we find nothing to warrant the charge given by the Court to the jury, that the fact of no title being shown in Hindsman, one of the lessors of the plaintiff, and that no authority was shown for making the division between him and Evans, did not prevent the statute from running in favor of Evans, *if he held the premises up to the designated line adversely under color of title.* Neither of the deeds designated a line; Camp says that Evans claimed half the land; Henry Evans said that Charles Evans went into possession of, and claimed one half of the lot in 1842, and continued in possession up to 1852. In 1845 he saw marks on trees made in dividing the land, but the written evidence—the deed accepted by the parties—evidence which is better than the frail recollection of witnesses, shows that that line, whenever and wherever run, was not recognized as the dividing line. On the contrary, it shows that it was not, for by the deed, the line *was to be run.* The line run by Johnson in 1845 was repudiated for some unexplained reason, and no witness speaks of a *designated line,* up to which the defendant, or any one under whom he claimed, held the land.

[2.] The charge of the Court to the jury that " a discrepancy of a few acres between the quantity specified in the deed and the actual quantity in possession, made no difference, if the premises under the bond or deed were distinctly defined and bounded by ascertained limits," for the same reason, was erroneous. The deeds did not define the bounds by ascertained limits. They were to be ascertained afterwards. Indeed, the conveyance was of a part of a tract of land, which entire tract was defined by metes and bounds, but the part conveyed was described by the number of acres to be taken from that entire tract, and the statute of limitations could not begin to run, according to the terms of the deed, until the line was run, or until there had been an actual undisturbed possession for so great a length of time as to create a legal presumption, that the division had been made. The conduct of the parties, in running the line in 1852, repels any such presumption. For these last reasons the Court ought to have given in charge to the jury the request of the plaintiff's counsel, that if the jury believed from the evidence, that it was specified in the deed from Camp to Evans that the land was to be divided equally, the statute of limitations did not begin to run until it was divided.

Judgment reversed.